## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

**SHIRLEY GREGORY,**                                          CASE NO.:

*Plaintiff,*

**v.**

**NATIONSTAR MORTGAGE LLC
D/B/A MR. COOPER, I.C. SYSTEM,
INC., TRANS UNION, LLC,
EXPERIAN INFORMATION
SOLUTIONS, INC., and EQUIFAX
INFORMATION SERVICES, LLC,**

*Defendants,*
_____/

## PLAINTIFF'S COMPLAINT
## JURY DEMAND

1.      Plaintiff, SHIRLEY GREGORY (hereinafter "Plaintiff" or "Ms.
Gregory") brings this action against Defendants NATIONSTAR MORTGAGE LLC
d/b/a MR. COOPER ("Nationstar"), I.C. SYSTEM, INC. ("I.C. System"), TRANS
UNION, LLC ("Trans Union"), EXPERIAN INFORMATION SOLUTIONS, INC.
("Experian") and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") for
violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter
"FCRA").

2.      Plaintiff further alleges violation of the Florida Consumer Collection
Practices act, Florida Statute §559.72 *et. seq*. (hereinafter "FCCPA") and Fair Debt

Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter "FDCPA") against I.C. System and states the following in support:

## JURISDICTION AND VENUE

3.     This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4.     Supplemental jurisdiction exists for Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

5.     Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

6.     Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Santa Rosa County, Florida.

## PARTIES

7.     Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Santa Rosa County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c), 15 U.S.C. §1692a(3) and Florida Statute §559.55(8).

8.     Defendant Nationstar is a Delaware limited liability company registered to conduct business in the State of Florida with a principal 8950 Cypress Waters Blvd., Coppell, TX 75019.

2

9.     Defendant I.C. System is a Minnesota corporation registered to conduct business in the State of Florida with a principal place of business at 444 Highway 96 E., Saint Paul, MN 55127-2557.

10.     I.C. System is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) and Florida Statute §559.55(7).

11.     At all times material hereto, I.C. System regularly collects or attempts to collect debts for other parties.

12.     I.C. System and Nationstar use instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to the three national consumer reporting agencies, Trans Union, Equifax, and Experian (collectively "credit reporting agencies").

13.     These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which have effects on consumers and their credit reports within the State of Florida.

14.     Defendant Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the State of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

15.     Defendant, Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

16.     Defendant, Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

### ***Long- Arm Jurisdiction***

17.     Florida's long-arm "appl[ies] to defendants committing tortious acts outside the state that cause injury in Florida." *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999). Accordingly, the long-arm statute confers personal jurisdiction over a nonresident defendant who is alleged to have committed a tortious act in Florida, which causes injury to a plaintiff. *Id*. at 1216. "[A] nonresident defendant may commit a tortious act within the state by electronic, written, or telephonic communication into Florida so long as the cause of action arises from such communication." *See Smith v. Trans-Siberian Orchestra,* 728 F. Supp. 2d 1315, 1321 (M.D. Fla. 2010).

4

18.     The purpose of the FCRA is to safeguard against the improper reporting of information on a credit report either by the credit reporting agency or by the furnisher of credit information. See *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1074 (9th Cir. 2001) (reversing a dismissal for lack of personal jurisdiction on an FCRA claim while stating the "mental distress can only be felt where Plaintiffs' 'sensibilities' reside -that is, Nevada."). Numerous courts have found personal jurisdiction in FCRA cases where the plaintiff resides and was injured by an out-of-state defendant's actions. *See Marcus Forbes v. Concord Advice, LLC et al.*, No. 8:19-cv-02980-VMC-CPT, Dkt. 73 at 16-18 (M.D. Fla. Apr. 21, 2020) (listing cases consistent with personal jurisdiction over nonresident defendants in FCRA cases).

19.     Long-Arm jurisdiction exists under the FCRA claims made against the Defendants because Ms. Gregory resides in the area where the effect of the communications was felt.

20.     Additionally, specific jurisdiction exists over I.C. System under Fla. Stat. 48.193(1)(a)(2) because it committed out-of-state acts, that are codified torts under the FCRA and FDCPA which have caused damage to Plaintiff in Florida.

21.     Personal jurisdiction exists over I.C. System because Plaintiff lives in the forum where she was injured by its actions. *See Koch v. Lake City Credit, LLC*, 6:19-cv-667-Orl-41GJK, 2019 WL 3719457, at *5 (M.D. Fla. July 23, 2019) (citing *InternetSols. Corp. v. Marshall*, 39 So. 3d 1201, 1208 (Fla. 2010) (nonresidents can

5

commit tortious acts in Florida by virtue of telephonic, electronic, or written communications into Florida)).  "[S]uits may be brought where a debtor receives a communication from a debt collector located elsewhere where the transmittal of those communications is claimed to have violated debt collection laws." *See Alecca v. AMG Managing Ptnrs., LLC*, No. 3:13-cv-163, 2014 WL 2987702, at *6 (M.D. Fla. Jul. 2, 2014) (quoting *Sluys v. Hand*, 831 F. Supp. 321, 324 (S.D.N.Y. 1993).

22.    Accordingly, I.C. System has created minimum contacts with this Forum by virtue of its telephonic, electronic, or written communications into Florida which violated the FCRA and FDCPA.

## STATUTORY FRAMEWORK

### THE FCRA

23.    The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.*, was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

24.    Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." *See* 15 U.S.C. §1681(a)(1).

25.    "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or

misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

26.     A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. *See* 15 U.S.C. §1681s-2.

27.     "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016).

28.     Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(3),(4).

29.     The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the

FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." *See* 15 U.S.C.S. § 1681i(a)(1)(A).

30.     In performing the reinvestigation, the FCRA requires a credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." *See* 15 U.S.C.S. § 1681i(a)(4).

31.     If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall...(i)  promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii)  promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." *See* 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

32.     The FCRA provides a private right of action against any person that violates the provisions of the FCRA. *See* 15 U.S.C. §§ 1681o, 1691n.

33.     If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may

recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. *See* 15 U.S.C. § 1681n(a).

34.     Under the FCRA, the term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:

    a.     credit or insurance to be used primarily for personal, family, or household purposes;

    b.     employment purposes; or

    c.     any other purpose authorized under section 1681b of this title.

*See* 15 U.S.C. § 1681a(d)(1).

35.     The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

**The FDCPA**

36.     The FDCPA provides, in relevant part: A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the

following conduct is a violation of this section: (2) The false representation of --
(A) the character, amount, or legal status of any debt …" *See* 15 U.S.C. § 1692e.

37.     A consumer has a right under the FDCPA to receive information from
a debt collector that is not "false, deceptive, or misleading." *See Pralle v. Cooling &
Winter, LLC*, No. 2: 16-cv-865-FtM-99CM (M.D. Fla. May 2, 2017).

38.     The FDCPA defines the term "consumer" as "any natural person
obligated or allegedly obligated to pay any debt." *See* 15 U.S.C. § 1692a(3).

39.     The FDCPA defines the term "debt" as "any obligation or alleged
obligation of a consumer to pay money arising out of a transaction in which the
money, property, insurance, or services which are the subject of the transaction are
primarily for personal, family, or household purposes, whether or not such obligation
has been reduced to judgment." *See* 15 U.S.C. § 1692a(5).

40.     The FDCPA defines the term "debt collector" as "any person who uses
any instrumentality of interstate commerce or the mails in any business the principal
purpose of which is the collection of any debts, or who regularly collects or attempts
to collect, directly or indirectly, debts owed or due or asserted to be owed or due
another." *See* 15 U.S.C. § 1692a(6).

41.     "The FDCPA does not ordinarily require proof of intentional violation
and, as a result, is described by some as a strict liability statute." *See LeBlanc v.*

*Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (citing 15 U.S.C. § 1692k).

42.     For the purposes of the claims brought in this action, the applicable standard under the FDCPA in the Eleventh Circuit is "the least sophisticated" consumer test. *See Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1175 (11th Cir. 1985) (adopting the test enunciated in Exposition Press Inc. v. FTC, 295 F.2d 869 (2d Cir. 1961)).

43.     The principles underlying the FDCPA must be implemented for "the public— that vast multitude which includes the ignorant, the unthinking and the credulous."  *See Jeter*, 760 F.2d at 1172-73 (internal citations omitted).   The "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."  *Id.* at 1173 (internal citations omitted).

44.     There is only one affirmative defense to liability for a violation of the FDCPA, the "bona fide error" defense. *See* 15 U.S.C. §1692k(c).

45.     To take advantage of this defense, the defendant must show by the preponderance of the evidence that its violation of the Act was not intentional, was a bona fide error, and occurred despite the maintenance of procedures reasonably adapted to avoid any such error. *See Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352-53 (11th Cir. 2009).

**The FCCPA**

46.     The FCCPA's goal is to "provide the consumer with the most protection possible." *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

47.     The FCCPA provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." *See* Fla. Stat. § 559.72(9).

48.     "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." *See* Fla. Stat. §559.77(2).

49.     As a consumer, Ms. Gregory has a private right of action against I.C. System pursuant to Florida Statute §559.77(2), which provides that "[a]ny person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages . . . not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff." (omissions added).

## FACTUAL ALLEGATIONS

50.     In 2011, Ms. Gregory's divorce from her then husband, Scott Gregory, was finalized.

51.     As part of the divorce, Ms. Gregory entered into a Marital Settlement Agreement and Parenting Plan ("Marital Settlement Agreement").

*Nationstar Account*

52.     The Marital Settlement Agreement provided that Mr. Gregory would have ownership and possession of the marital property beginning in June 2011 and would be responsible for all mortgage payments going forward.

53.     On or about June 27, 2011, Ms. Gregory executed a quitclaim deed to the marital property as required by the Marital Settlement Agreement.

54.     However, Mr. Gregory failed to refinance the mortgage loan for the marital property to remove Ms. Gregory's name from the loan.

55.     The mortgage loan was subsequently transferred to Nationstar in 2019.

56.     Between 2021 and 2024, Mr. Gregory failed to make at least ten monthly mortgage payments on time that were also reflected on Ms. Gregory's credit reports with Trans Union, Equifax and Experian.

57.     Ms. Gregory began disputing the late payment history on the Nationstar account with the three credit reporting agencies.

58.     Specifically, on or about August 24, 2023, Ms. Gregory mailed written dispute letters to Trans Union, Equifax and Experian with a courtesy copy of each letter also mailed to Nationstar ("August 2023 dispute").

59.     Upon information and belief, the credit reporting agencies also forwarded Ms. Gregory's dispute letters to Nationstar.

60.     In her dispute letters, Ms. Gregory explained that she was not responsible for making the monthly payments on the Nationstar account and provided a copy of the Marital Settlement Agreement with her dispute letters.

61.     Ms. Gregory requested that, if the Defendants did not correct the late payment history, that Trans Union, Equifax and Experian include a consumer statement on her credit reports stating that the late payments do not reflect her financial accountability because her ex-husband is responsible for the mortgage payments.

62.     Defendants Trans Union and Experian sent Ms. Gregory correspondence indicating their intent to continue reporting the late payment history associated with the Nationstar account on her credit reports.

63.     Furthermore, Trans Union and Experian did not include Ms. Gregory consumer statement regarding the Nationstar account in any subsequent reports they prepared about her.

64.     Defendant Equifax failed to provide Ms. Gregory with any investigation results at all related to her August 2023 dispute letter and continued to report the late payment history associated with the Nationstar account.

65.     Similarly to Trans Union and Experian, Equifax did not include Ms. Gregory's consumer statement in any subsequent report it prepared about her.

66.     On or about January 10, 2024, Ms. Gregory again mailed dispute letters to each of the three credit reporting agencies with a courtesy copy of each letter to Nationstar ("January 2024 dispute").

67.     Defendants either failed to investigate Ms. Gregory's January 2024 disputes, or if they did perform investigates, did not provide Ms. Gregory with the results of their investigations and continued to report the Nationstar account with the late payment history.

68.     As of July 2024, Defendants Trans Union and Experian also failed to mark the Nationstar account as disputed.

69.     While Ms. Gregory may technically remain contractually liable for the Nationstar account because her ex-husband failed to refinance the mortgage loan and the Marital Settlement Agreement has no impact on Nationstar's rights against her, the late payment history being reported by Defendants on Ms. Gregory's credit reports is incorrect, inaccurate and/or materially misleading.

70.     After receiving a copy of the Marital Settlement Agreement with Ms. Gregory's dispute letters, Defendants Trans Union, Equifax, Experian and Nationstar's continued reporting of the late payment history without including Ms. Gregory's consumer statement and marking the account as disputed was an

inaccurate and misleading representation of Ms. Gregory's credit risk to existing and potential creditors.

71.     On or about May 11, 2024, Barclays Bank Delaware denied Ms. Gregory's application for credit based on information it obtained about her from Trans Union which included the inaccurate and/or misleading information related to the Nationstar account.

72.     On or about May 11, 2024, JPMorgan Chase Bank denied Ms. Gregory's application for credit based on information it obtained about her from Equifax which included the inaccurate and/or misleading information related to the Nationstar account.

73.     On or about May 18, 2024, JPMorgan Chase Bank denied Ms. Gregory's application for credit based on information it obtained about her from Experian which included the inaccurate and/or misleading information related to the Nationstar account.

*I.C. System Account*

74.     The Marital Settlement Agreement also required Mr. Gregory to provide health insurance for the couple's minor child and that any out-of-pocket medical expenses for the minor child were to be split evenly between Mr. Gregory and Ms. Gregory.

75.     I.C. System reported a collection account for the minor child's medical expense to Plaintiff's credit files with Trans Union and Experian notating that Ms. Gregory was solely responsible for the full balance of the debt.

76.     On or about August 24, 2023, Ms. Gregory mailed written dispute letters to Trans Union and Experian with a courtesy copy of each letter also mailed to I.C. System disputing the notation that the debt was her individual responsibility.

77.     Ms. Gregory requested that, if the Defendants did not correct the individual responsibility notation, that Trans Union and Experian include a consumer statement on her credit reports stating that the responsibility of the debt was a shared responsibility with her ex-husband per the Marital Settlement Agreement.

78.     Upon information and belief, the credit reporting agencies also forwarded Ms. Gregory's dispute letters to I.C. System.

79.     Defendants Trans Union, Experian and I.C. System verified that the collection account was reporting accurately and continued to erroneously report that the I.C. System collection account was the sole responsibility of Ms. Gregory.

80.     Trans Union and Experian also did not include Ms. Gregory's consumer statement regarding the I.C. System account in subsequent reports they prepared about her.

81.     Reporting that the I.C. System account was the sole responsibility of Ms. Gregory on her credit reports is incorrect, inaccurate and creates a misleading impression about Ms. Gregory's credit risk to existing and potential creditors.

82.     Defendants' derogatory and inaccurate reporting of the Nationstar and I.C. System on Plaintiff's credit reports negatively reflects upon Ms. Gregory's financial obligations, credit score and creditworthiness to existing and potential creditors.

83.     Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *See Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *See Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); *See Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *See Binns v. Ocwen Loan Servicing, LLC*, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered

intangible harms"); *See Rothman v. U.S. Bank Nat'l Ass'n*, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *See Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *See Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, *See Coulbertson v. Experian Info. Sols., Inc.*, No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

## <u>COUNT I – VIOLATIONS OF 15 U.S.C. §1681s-2(b)</u><br><u>AGAINST NATIONSTAR</u>

84.     Plaintiff incorporates by reference paragraphs 1, 3, 5 – 8, 12 – 13, 17-19, 23 – 35, 50 – 73 and 82 – 83 as if fully stated herein.

85.     Nationstar is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

86.     Nationstar violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's August 2023 dispute and January 2024 dispute when it failed to review all relevant information provided by the credit reporting agencies.

87.     As a result of Nationstar's violations of the FCRA, Plaintiff has been damaged.

88.     Plaintiff's damages include damages for mental and emotional distress associated with the Nationstar account remaining on her credit report(s) following her disputes, credit denials, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

89.     Nationstar negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

90.     Additionally, Nationstar committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

91.     Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Nationstar in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT II – VIOLATIONS OF 15 U.S.C. §1681s-2(b) AGAINST I.C. SYSTEM

92.     Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 9 – 13, 17 – 22 – 35, 50 – 51, 74 – 79 and 81 – 83 as if fully stated herein.

93.     I.C. System is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

94.     I.C. System violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's August 2023 dispute when it failed to review all relevant information provided by the credit reporting agencies.

95.     As a result of I.C. System's violations of the FCRA, Plaintiff has been damaged.

96.     Plaintiff's damages include damages for mental and emotional distress associated with the I.C. System account remaining on her credit report(s) following her dispute, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

97.     I.C. System negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

98.     Additionally, I.C. System committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

99.     Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against I.C. System in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law,

and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT III - VIOLATIONS OF 15 U.S.C. §1692e(2)(a) AGAINST I.C. SYSTEM

100.    Plaintiff incorporates by reference paragraphs 2 – 3, 5 – 7, 9 – 13, 17 – 22, 36 – 45, 50 – 51, 74 – 79 and 81 – 83 as if fully stated herein.

101.    A "debt collector" violates 15 U.S.C. §1692e(2)(a) by "[t]he false representation of the character, amount, or legal status of any debt."

102.    After Plaintiff placed I.C. System on notice that she was not individually responsible for the debt by communicating directly with I.C. System and through the credit reporting agencies in August 2023, I.C. System had no reasonable basis to continue to report the collection account as Ms. Gregory's individual responsibility.

103.    I.C. System violated §1692e(2)(a) when it communicated false credit information to the credit reporting agencies by stating that the alleged debt was Plaintiff's individual responsibility in an attempt to coerce Plaintiff to pay the debt in full when she was only responsible to pay half of the balance.

104.    Each month that I.C. System communicated false credit information regarding Plaintiff constitutes a violation of §1692e(2)(a).

105.    Additionally, I.C. System has violated §1692e(2)(a) each time the false credit information was viewed by a third party in connection with an account review,

offer of credit, or application of credit. The FDCPA is a strict liability statute and accordingly I.C. System's conduct need not have been intentional, I.C. System's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

106.   I.C. System's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. Id. at 1194 (stating "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

107.   I.C. System, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(2)(a).

108.   15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

109.   As a result of I.C. System's violations, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the I.C. System account remaining on her credit report(s) following her disputes, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against I.C. System in the form of actual damages, statutory damages and punitive damages pursuant to 15 U.S.C. § 1692k; attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IV - VIOLATIONS OF 15 U.S.C. §1692e(8) AGAINST I.C. SYSTEM

110.    Plaintiff incorporates by reference paragraphs 2, 3, 5-7, 9 – 13, 17 – 22, 36 – 45, 50 – 51, 74 – 79 and 81 – 83 as if fully stated herein.

111.    A "debt collector" violates 15 U.S.C. §1692e(8) by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

112.    After Plaintiff placed I.C. System on notice that she was not individually responsible for the debt by communicating directly with I.C. System and through the credit reporting agencies in August 2023, I.C. System had no reasonable basis to continue to report the collection account as Ms. Gregory's individual responsibility.

113.    I.C. System violated §1692e(8) when it communicated false credit information to the credit reporting agencies by stating that the alleged debt was

Plaintiff's individual responsibility in an attempt to coerce Plaintiff to pay the debt in full when she was only responsible to pay half of the balance.

114.    Each month that I.C. System communicated false credit information regarding Plaintiff constitutes a violation of §1692e(8).

115.    Additionally, I.C. System has violated §1692e(8) each time the false credit information was viewed by a third party in connection with an account review, offer of credit, or application of credit.

116.    The FDCPA is a strict liability statute and accordingly I.C. System's conduct need not have been intentional, I.C. System's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

117.    I.C. System's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. *Id.* at 1194 (stating "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

118.    I.C. System, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(8).

119.    15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person

for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

120.    As a result of I.C. System's violations, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the I.C. System account remaining on her credit report(s) following her disputes, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against I.C. System in the form of actual damages, statutory damages and punitive damages pursuant to 15 U.S.C. § 1692k; attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT V - VIOLATIONS OF 15 U.S.C. §1692e(10) AGAINST I.C. SYSTEM

121.    Plaintiff incorporates by reference paragraphs 2 – 3, 5 – 7, 9 – 13, 17 – 22, 36 – 45, 50 – 51, 74 – 79 and 81 – 83 as if fully stated herein.

122.    A "debt collector" violates 15 U.S.C. §1692e(10)  by "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

123.    After Plaintiff placed I.C. System on notice that she was not individually responsible for the debt by communicating directly with I.C. System

and through the credit reporting agencies in August 2023, I.C. System had no reasonable basis to continue to report the collection account as Ms. Gregory's individual responsibility.

124.   I.C. System violated §1692e(10) when it communicated false credit information to the credit reporting agencies by stating that the alleged debt was Plaintiff's individual responsibility in an attempt to coerce Plaintiff to pay the debt in full when she was only responsible to pay half of the balance.

125.   Each month that I.C. System communicated false credit information regarding Plaintiff constitutes a violation of §1692e(10).

126.   Additionally, I.C. System has violated §1692e(10) each time the false credit information was viewed by a third party in connection with an account review, offer of credit, or application of credit.

127.   The FDCPA is a strict liability statute and accordingly I.C. System's conduct need not have been intentional, I.C. System's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

128.   I.C. System's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. *Id*. at 1194 (stating "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

129.     I.C. System, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(8).

130.     15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

131.     As a result of I.C. System's violations, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the I.C. System account remaining on her credit report(s) following her disputes, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against I.C. System in the form of actual damages, statutory damages and punitive damages pursuant to 15 U.S.C. § 1692k; attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VI – VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST I.C. SYSTEM

132.     Plaintiff incorporates by reference paragraphs 2, 4 – 7, 9 – 13, 46 – 49 – 51, 74 – 79 and 81 – 83 as if fully stated herein.

133.   At all relevant times to this action, I.C. System is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

134.   After Plaintiff placed I.C. System on notice that she was not individually responsible for the debt by communicating directly with I.C. System and through the credit reporting agencies in August 2023, I.C. System had no reasonable basis to continue to report the collection account as Ms. Gregory's individual responsibility.

135.   I.C. System violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Defendant knew that the debt was not legitimate or asserting the existence of some other legal right when Defendant knew that right did not exist.

136.   Specifically, I.C. System communicated false credit information about Plaintiff when it continued to report to the credit reporting agencies that that the alleged debt was Plaintiff's individual responsibility in an attempt to coerce Plaintiff to pay the debt in full when she was only responsible to pay half of the balance.

137.   "Any person who fails to comply with any provision of  §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's

noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. §559.77(2) (emphasis added).

138.   As a result of Defendant's violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing Defendant's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against I.C. System actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VII - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST TRANS UNION

139.   Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 14, 17 – 19, 23 – 35, 50 – 63, 66 – 71 and 74 – 83 as if fully stated herein.

140.   At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

141.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

142.   During the relevant time frame, Trans Union received Plaintiff's disputes regarding the accuracy or completeness of the Nationstar and I.C. System accounts appearing on Plaintiff's consumer disclosure.

143.   Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file and failing to include a statement of dispute.

144.   Additionally, Trans Union unreasonably relied on information provided by Nationstar and I.C. System, when readily verifiable information was provided by Plaintiff in the disputes placing Trans Union on notice that Nationstar and I.C. System's credit information was inaccurate, misleading and unreliable.

145.   Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

146.   Alternatively, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

147.   As a result of Trans Union's FCRA violations, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the Nationstar and I.C. System accounts remaining on her credit report(s) following her dispute, loss of credit and the opportunity to benefit from

credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VIII - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST TRANS UNION

148.     Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 14, 17 – 19, 23 – 35, 50 – 63, 66 – 71 and 74 – 83 as if fully stated herein.

149.     At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

150.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

151.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

152.    Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

153.    In the alternative, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

154.    As a result of Trans Union's failures to comply with the FCRA, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the Nationstar and I.C. System account remaining on her credit report(s) following her disputes, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IX – VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EXPERIAN

155.    Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 15, 17 – 19, 23 – 35, 50 – 63, 66 – 70, 73 and 74 – 83 as if fully stated herein.

156.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

157.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

158.    During the relevant time frame, Experian received Plaintiff's disputes regarding the accuracy or completeness of the Nationstar and I.C. System accounts appearing on Plaintiff's consumer disclosure.

159.    Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file and failing to include a statement of dispute.

160.    Additionally, Experian unreasonably relied on information provided by Nationstar and I.C. System, when readily verifiable information was provided by Plaintiff in the disputes placing Experian on notice that Nationstar and I.C. System's credit information was inaccurate, misleading and unreliable.

161.    Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

162.    In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

163.    As a result of Experian's violations of the FCRA, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the Nationstar and I.C. System accounts remaining on her credit report(s) following her dispute, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances

## COUNT X– VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EXPERIAN

164.    Plaintiff incorporates by reference paragraphs 1, 3, 5 –7, 15, 17 – 19, 23 – 35, 50 – 63, 66 – 70, 73, 74 – 83 as if fully stated herein.

165.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

166.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

167.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

168.    Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

169.    In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

170.    As a result of Experian's failures to comply with the FCRA, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the Nationstar and I.C. System accounts remaining on her credit report(s) following her dispute, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs;

Interest as permitted by law; and Such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XI – VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EQUIFAX

171.    Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 16 – 19, 23 – 35, 50 – 61, 64 – 67, 69 – 70, 72 and 82 – 83 as if fully stated herein.

172.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

173.    At all times relevant hereto, Plaintiff is and was a "consumer" as provided for under the FCRA.

174.    During the relevant time frame, Equifax received Plaintiff's disputes regarding the accuracy or completeness of the Nationstar account appearing on Plaintiff's consumer disclosure.

175.    Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file and failing to include a statement of dispute.

176.    Additionally, Equifax unreasonably relied on information provided by Nationstar, when readily verifiable information was provided by Plaintiff in the disputes placing Equifax on notice that Nationstar's credit information was inaccurate, misleading and unreliable.

177.   Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

178.   In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

179.   As a result of Equifax's violations of the FCRA, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the Nationstar account remaining on her credit report(s) following her dispute, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and such other and further relief including as the Court deems equitable and just under the circumstances

## COUNT XII– VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EQUIFAX

180.   Plaintiff incorporates by reference paragraphs 1, 3, 5 – 7, 16 – 19, 23 – 35, 50 – 61, 64 – 67, 69 – 70, 72 and 82 – 83 as if fully stated herein.

181.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

182.    At all times relevant hereto, Plaintiff is and was a "consumer" as provided for under the FCRA.

183.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

184.    Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

185.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

186.    As a result of Equifax's failures to comply with the FCRA, Plaintiff has suffered damages including but not limited to, damages for mental and emotional distress associated with the Nationstar account remaining on her credit report(s) following her dispute, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of: Actual damages in an amount to be determined

by the jury; Punitive damages in an amount to be determined by the jury; Statutory

damages as determined by the Court; Attorneys' fees, litigation expenses and costs;

Interest as permitted by law; and Such other and further relief including as the Court

deems equitable and just under the circumstances.

## JURY DEMAND

187.    Plaintiff demands a trial by jury on all issues so triable.


Dated: August 15, 2024                    *Respectfully submitted*,

                                         **SHARMIN & SHARMIN, P.A.**

                                         */s/ Eiman Sharmin*
                                         Eiman Sharmin, Esq.
                                         eiman@sharminlaw.com
                                         FBN: 716391
                                         830 North Federal Highway
                                         Lake Worth, FL 33460
                                         Main: 561-655-3925
                                         Fax: (844) 921-1022
                                         *Attorneys for Plaintiff*